```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
 MATTHEW TESLA,                                                 :
                                                                :
                                                                :
                                       Plaintiff,               :
                                                                :           24-CV-8901 (VEC)
                      -against-                                 :
                                                                :           OPINION & ORDER
                                                                :
 DRGUT PELINKOVIC, ELVIRA PELINKOVIC,                           :
 LJUMNI PELINKOVIC, and CROTONA                                 :
 AVENUE BUILDERS, LLC,                                          :
                                                                :
                                                                :
                                       Defendants.              :
-------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Matthew Tesla ("Plaintiff") sued Drgut "Doug," Elvira, and Ljumni Pelinkovic, and Crotona Avenue Builders, LLC ("Defendants") to enforce his rights pursuant to an alleged partnership or joint venture he entered into with Doug Pelinkovic to invest in cryptocurrency. Defendants moved to dismiss, arguing, among other things, that no partnership existed. *See* Mot. to Dismiss, Dkt. 24 ("Mot." or the "Motion"). The Motion is GRANTED.

## BACKGROUND[1]

Plaintiff is a long-time cryptocurrency investor who had a "close personal relationship" with Defendant Drgut "Doug" Pelinkovic. 2d Am. Compl., Dkt. 37 ("SAC") ¶¶ 1, 38–45.[2]

---

[1] The Court presumes the truth of the well-pled factual allegations in the Complaint in assessing Defendants' motion to dismiss for failure to state a claim. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

[2] This Motion was originally filed in response to the First Amended Complaint, Dkt. 15. The Court subsequently ordered Plaintiffs to file a Second Amended Complaint for the purpose of incorporating additional allegations about the identity and citizenship of each Defendant — a prerequisite for establishing diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. 38 at 3. In the same Order, the Court advised that it would construe the Motion as seeking to dismiss the SAC unless it received a letter from Plaintiff indicating that doing so would be

Between December 2020 and February 2021, the pair held "one or more" telephone calls during which Plaintiff says he offered to jointly control, and share in the profits and losses of, a cryptocurrency investment enterprise. *Id.* ¶ 56. During one such call, Plaintiff and Pelinkovic allegedly agreed that Pelinkovic would contribute all of the investment capital (between $3,000,000–$5,000,000 of his own money). *Id.* ¶ 49. Plaintiff would not contribute any money but would provide his "knowledge and expertise" to select cryptocurrency assets. *Id*. When Pelinkovic indicated that he was concerned about losing money, Plaintiff, "to allay [Pelinkovic's] fears," purportedly "agreed to commit his sizable personal fortune to backstop any losses that [Pelinkovic] may incur." *Id.* ¶ 51. At some point during the call, Pelinkovic said, "I'm in! I'm in!" *Id.* ¶ 49.

According to Plaintiff, Pelinkovic was a "complete novice in the cryptocurrency space." *Id.* ¶ 53. Plaintiff "provided everything from rudimentary trading support (for example, setting up exchange accounts and facilitating 'cold storage' of cryptocurrency assets) to selecting the crypto assets in which the partnership would invest." *Id*. Plaintiff also traveled to Pelinkovic's home in New York at various points in order to set up "cold storage" of the assets, *id.* ¶ 58, as well as to "solidify the relationship and bond between themselves as partners," *id.* ¶ 67.

In September 2024, Plaintiff called Pelinkovic to dissolve the putative partnership, request an accounting, and collect a distribution of "his share" of the profits Pelinkovic earned from his investments. *Id.* ¶ 69. Pelinkovic refused, leading Plaintiff to file suit in New York state court. *Id.* ¶¶ 73, 78. Pelinkovic removed the case to this Court. *See* Not. of Removal, Dkt. 1.

---

inappropriate. *Id.* Having not received such a letter, the Court interprets the Motion as seeking dismissal of the now-operative SAC.

After this action commenced, Plaintiff alleges that Pelinkovic took measures to render himself judgment-proof. Among other things, Pelinkovic informed Plaintiff that he had "lost all of the cryptocurrency as a result of an undisclosed leverage position that he had taken" — an assertion that Plaintiff says "strains credulity." SAC ¶¶ 80, 82. Plaintiff also alleges that, after this action was filed, Pelinkovic transferred his ownership of real property and cryptocurrency assets to the other Defendants in this case: Pelinkovic's wife, his brother, and a company called Crotona Avenue Builders. *Id.* ¶¶ 84, 91, 95.

Defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. Plaintiff opposes. *See* Opp., Dkt. 34.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court construes the complaint liberally and draws all reasonable inferences in the light most favorable to the plaintiff. *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). A well-pled complaint, however, "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

### II. Plaintiff Has Failed to Plead the Existence of a Partnership or Joint Venture

"Under New York law joint ventures are governed by the same legal rules as partnerships because a joint venture is essentially a partnership for a limited purpose." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001) (citations omitted). To allege the existence of a partnership, a plaintiff must plead facts sufficient to show: "(1) the parties' sharing of profits and

losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." *St.-Works Dev. LLC v. Richman*, No. 13-CV-774, 2015 WL 872457, at *4 (S.D.N.Y. Feb. 3, 2015) (quoting *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004)).  Similarly, to allege the existence of a joint venture, a plaintiff must plead facts sufficient to show that: (1) two or more persons entered into a specific agreement to carry on an enterprise for profit; (2) they intended to be joint venturers; (3) each made a contribution of property, financing, skill, knowledge, or effort; (4) each had some degree of joint control over the venture; and (5) there was a provision for sharing profits and losses. *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67–68 (2d Cir. 2003).  Failure to plead any one element is fatal to a claim that there was a partnership or joint venture. *Zeising v. Kelly*, 152 F. Supp. 2d 335, 347–48 (S.D.N.Y. 2001).  Partnerships and joint ventures may be formed orally or in writing.[3]  *See In re Bernard L. Madoff Inv. Secs. LLC*, No. 22-1107, 2023 WL 5439455, at *4 (2d Cir. Aug. 24, 2023); *Shore Parkway Assocs. v. United Artists Theater Cir., Inc.*, No. 92-CV-8252, 1993 WL 361646, at *3 (S.D.N.Y. 1993).

The Court focuses primarily on the intent requirement.  "Because the creation of a joint venture [or partnership] imposes significant duties and obligations on the parties involved, the parties must be clear that they intend to form a joint venture [or partnership], which is a fiduciary relationship, and not a simple contract." *Learning Annex Holdings, LLC v. Whitney Educ. Grp.,*

---

[3] The Statute of Frauds does not bar an oral partnership or joint venture with no specified duration because New York courts consider these types of agreements to be terminable at will. *Prince v. O'Brien*, 234 A.D.2d 12, 12 (1st Dep't 1996) ("An oral agreement to form a partnership for an indefinite period creates a partnership at will and is not barred by the Statute of Frauds."); *Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001) ("Absent any definite term of duration, the joint venture is arguably one at will."); 37 C.J.S. Statute of Frauds § 46 ("A contract which is not expressly to run for more than a year and is terminable at will . . . is not within the statute of frauds.").

*Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011) (cleaned up).  In considering whether the parties intended to form such a relationship, "[t]he ultimate inquiry . . . is whether the parties have so joined their property, interests, skills, and risks [that] their contributions have become one and their commingled properties and interests have been made subject to each of the others' actions, on the trust and inducement that each would act for their joint benefit." *Zeising*, 152 F. Supp. 2d at 348.  The intent inquiry, therefore, necessarily overlaps with the inquiry into other elements of a partnership or joint venture, such as joint contributions and an agreement to share profits and losses, because the presence or absence of those elements sheds light on the type of relationship the parties intended to form.  *See Hanson v. Hanson*, No. 18-CV-695, 2019 WL 935127, at *8 (S.D.N.Y. Feb. 26, 2019) (a plaintiff must allege facts "that suggest[] either an express or an implied intent to . . . comingle property, contributions, and fate").

      The SAC falls far short of alleging facts from which the Court can plausibly infer an intent to form a partnership or joint venture.  Remarkably, the SAC does not allege that Plaintiff contributed *any capital at all* to Pelinkovic's investment endeavor, let alone that he and Pelinkovic commingled their property and interests.  *Zeising*, 152 F. Supp. 2d at 348; *see also Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (2d Dep't 1988) ("[T]he failure of a party to contribute capital is strongly indicative that no partnership exists.").  In fact, the sole contributions the SAC alleges Plaintiff made were advising Pelinkovic about which investments to make and traveling to New York to assist him in setting up his accounts and arranging for "cold storage" of the assets.  SAC ¶ 53.  The SAC does not describe any conversations between Plaintiff and Pelinkovic in which they discussed (in non-conclusory terms) the details of their collaboration, nor does it allege any other facts to undermine the obvious inference that Plaintiff's costless assistance was an act of friendship, not partnership.

Plaintiff's purported offer to "backstop" Pelinkovic's losses does not alter the Court's conclusion. SAC ¶ 49. As an initial matter, it is unclear what, precisely, Plaintiff meant when he said he would "backstop" Pelinkovic's losses. Nor is it clear whether this offer required Plaintiff to make any financial contribution at any point. The Court, therefore, cannot meaningfully construe the offer to "backstop" losses as anything more than a conclusory assertion that Plaintiff and Pelinkovic had an unmaterialized agreement to share losses (or maybe for Plaintiff to absorb all of the losses). *See Selective Beauty SAS v. Liz Claiborne, Inc.*, No. 09-CV-9764, 2010 WL 11685041, at *7–*8 (S.D.N.Y. May 27, 2010) (no joint venture where complaint offers only "conclusory" assertions of intent to share in profits and losses). Moreover, the SAC does not describe Plaintiff's offer to backstop Pelinkovic's losses as a product of their intent to "join their property, interests, skills, and risks," *Zeising*, 152 F. Supp. 2d at 348, but rather as an effort by Plaintiff "to allay [Pelinkovic's] fears" that he would lose money investing in cryptocurrency. SAC ¶¶ 51.

*Jobanputra v. Kim*, No. 21-CV-7071, 2022 WL 4538201 (S.D.N.Y. Sep. 28, 2022), is instructive. That case, like this one, involved an alleged oral joint venture to invest in cryptocurrency. *Id.* at *1–*2. Unlike this one, however, the court found that the plaintiff had pled adequately the intent requirement in light of many specific factual allegations indicating a conscious choice to form a partnership, including that the plaintiff and the defendant engaged in negotiations, discussed and agreed upon a 20/80 profit split, required mutual agreement before making any investment, and created documents with language reflecting their joint ownership of the cryptocurrency investments. *Id.* at *4–*5. The SAC in this case, by contrast, merely parrots the legal requirements of a joint venture, with no specific factual allegations suggesting that Plaintiff and Pelinkovic actually intended to enter into a binding partnership or joint venture. *See*

SAC ¶¶ 56–57 (alleging that Plaintiff and Pelinkovic "held one or more telephone calls" in which they agreed "(a) to commence a partnership/joint venture to invest in cryptocurrency for profit, (b) share in profits and losses, (c) share in management and control, and (d) otherwise act as partners/joint venturers"). Such conclusory allegations are plainly insufficient to allege the existence of a partnership or joint venture. *See Kidz Cloz*, 320 F. Supp. 2d at 174 ("[C]alling an organization a partnership does not make it one.").

The SAC also fails to establish that Plaintiff and Pelinkovic exercised joint management and control over Pelinkovic's investments, further dooming Plaintiff's partnership/joint venture claim. Plaintiff asserts that he and Pelinkovic each "exercised control" inasmuch as Plaintiff selected the investments and "platforms of acquisition and storage," and Pelinkovic "retained custody and control over the exchanges and wallets." SAC ¶ 4. Put more bluntly, Pelinkovic provided all of the money and controlled all of the accounts, and Plaintiff provided advice. Plaintiff's assertion that his advice was tantamount to "control" is implausible on its face and is made even less plausible by the fact that Pelinkovic apparently did not follow Plaintiff's advice; indeed, the SAC chides Pelinkovic for entering into "an undisclosed leverage position" without "advis[ing] Plaintiff." *Id.* ¶ 80. That Plaintiff could not independently review Pelinkovic's investments, but rather needed to be "advised" about them, clearly indicates that Pelinkvoic alone had authority over which investments he would make with his own money.

In short, the SAC fails to allege plausibly the existence of a partnership or joint venture between Plaintiff and Pelinkovic. Accordingly, the First, Second, and Third Causes of Action — all of which are premised on the existence of such a relationship — are dismissed.

### III.     Plaintiff Has Not Established that Pelinkovic Owed Him a Fiduciary Duty

The SAC also claims that Pelinkovic breached his fiduciary duty to Plaintiff.  SAC ¶¶ 118–22.  Plaintiff alleges two potential bases for the existence of a fiduciary relationship between him and Pelinkovic: their alleged partnership or joint venture and their "close personal relationship."  *Id*. ¶ 119.  Because the Court has already concluded that Plaintiff has not adequately alleged the existence of a partnership or joint venture, it will address only the second proposed basis.

A fiduciary duty exists "where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge."  *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2d Dep't 2001).  Fiduciary duties may arise when "one party places special trust and confidence in another such that the first party becomes dependent upon the second party."  *P. Chimento Co. v. Banco Popular de Puerto Rico*, 208 A.D.2d 385, 386 (1st Dep't 1994).

Plaintiff has failed to allege facts showing that Pelinkovic owed him a fiduciary duty as a result of their close friendship.  As an initial matter, it is true that, under highly specific circumstances, a close personal relationship between a knowledgeable investor and a dependent newcomer may give rise to a fiduciary duty.  *See, e.g.*, *Marini v. Adamo*, 995 F. Supp. 2d 155, 202 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016), *and aff'd*, 644 F. App'x 33 (2d Cir. 2016) (experienced rare coin investor owed a fiduciary duty to his "extremely close friend[]," who placed "complete trust and confidence" in the investor to "facilitate[e] . . . coin purchases for [his] best interest").  To the extent the relationship between Plaintiff and Pelinkovic might give rise to such a duty, however, the SAC suggests that it would be *Plaintiff* who owed a fiduciary duty to *Pelinkovic*, not vice versa.  According to Plaintiff, it was he who had "extensive knowledge, experience, and success in cryptocurrency markets," SAC ¶ 46; Pelinkovic was, by

contrast, "a complete novice," *id.* ¶ 53. Any potential basis for the novice Pelinkovic owing, and subsequently breaching, a fiduciary duty to the seasoned Plaintiff is entirely missing from the SAC.

Accordingly, the Fourth Cause of Action is dismissed.

IV. **Plaintiff May Not Recover on the Basis of Promissory Estoppel**

In the alternative, Plaintiff argues that, even if he and Pelinkovic did not enter into a partnership or joint venture, he is nevertheless entitled to damages pursuant to a promissory estoppel theory. SAC ¶¶ 123–26. Specifically, he claims that he is entitled to recover profits from Pelinkovic's cryptocurrency investments and for the time and money he expended in connection with the venture in reliance upon his purported agreement with Pelinkovic. SAC ¶¶ 58, 60, 67.

To state a claim for promissory estoppel pursuant to New York law, a plaintiff must show (i) "a clear and unambiguous promise;" (ii) "reasonable and foreseeable reliance on that promise;" and (iii) "injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The SAC fails to satisfy even the first element. According to the SAC, Plaintiff "orally offered, and [Pelinkovic] orally accepted that [Pelinkovic] would capitalize the partnership with between $3,000,000 and $5,000,000; that Plaintiff would backstop any losses of Defendant Doug's capital sustained during the course of the partnership; and that Plaintiff would leverage his knowledge and expertise to determine what crypto assets to invest in." SAC ¶ 49. Missing from the SAC is any allegation that Pelinkovic ever hinted — let alone made a "clear and unambiguous promise" — that he and Plaintiff had entered into a business relationship pursuant to which they would share profits or expenses. *See Henneberry* v. *Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006)("[A]bsent a distinct

communication to be bound, a statement by one party to another that evinces the speaker's desire to consummate or further a commercial transaction does not generally constitute a clear and unambiguous promise.").

Accordingly, the Fifth Cause of Action is dismissed.

## V. Plaintiff May Not Recover on a Theory of Unjust Enrichment

The SAC also claims, in the alternative, that Plaintiff's agreement with Pelinkovic should be enforced on a theory of unjust enrichment. SAC ¶¶ 127–30. Under New York law, unjust enrichment is a "common law quasi-contract cause of action requiring the plaintiff to establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Research Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation and internal quotation marks omitted). "[A]n unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021).

Plaintiff makes no effort to provide any basis for his unjust enrichment argument that is independent from the basis for his joint venture/partnership claims. The Court sees no reason to find that it would be "against equity and good conscience to permit the defendant to retain what is sought to be recovered" — *i.e.*, 50% of the profits Pelinkovic earned by investing his own money. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

Accordingly, the Sixth Cause of Action is dismissed.

## VI. Plaintiff's Remaining Claims Are Dismissed

Plaintiff alleges two additional claims pursuant to the New York Debtor & Creditor Law to void asset transfers that Pelinkovic executed after he became aware of Plaintiff's suit against

him, SAC ¶¶ 131–147, plus a common law claim against all Defendants for conversion and aiding and abetting those transfers, *id.* ¶¶ 148–52. All of these claims presuppose the existence of a creditor-debtor relationship between Plaintiff and Pelinkovic.[4] Having considered and rejected all of Plaintiff's theories for why Pelinkovic owes him money, the Court grants Defendants' motion to dismiss the Seventh, Eighth, and Ninth Causes of Action.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 24.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Nevertheless, the Court has discretion to deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Because Plaintiff has already amended his complaint once after Defendants filed a motion to dismiss that raised many of the arguments discussed in this Opinion, and because many of the factual allegations already contained in the SAC *undermine*, rather than enhance, Plaintiff's claims, the Court finds that further amendment would be futile. Leave to amend, therefore, is DENIED, and this case is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

Date: **August 26, 2025**
      **New York, NY**

　　　　　　　　　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

---

[4] The New York Debtor & Creditor Law provides the following definitions: a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured"; a "creditor" is "a person that has a claim"; and a "debtor" is "a person that is liable on a claim." N.Y. Debt. & Cred. Law § 270(c)–(d), (f).